UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SHEILA RENEE RUNKLE,   PLAINTIFF
Administratrix of the Estate
of Robert Earl Runkle, Deceased

v.   CIVIL ACTION NO. 3:08-CV-188-S

BECKY W. PANCAKE, et al.   DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court upon the motion of defendant Dr. Ronald Fleming, to dismiss the claims filed against him by plaintiff Sheila Renee Runkle, Administratrix of the Estate of Robert Earl Runkle, pursuant to Fed. R. Civ. P. 12(b)(6). Defendant argues that plaintiff's complaint fails to state a claim upon which relief can be granted. Alternatively, defendant has moved the court for summary judgment (DN 12). Plaintiff has responded (DN 18) and defendant has replied (DN 21).[1] For the reasons that follow, defendant's motion for summary judgment will be granted and defendant will be dismissed from this action.

### BACKGROUND[2]

Robert Earl Runkle ("Runkle") was initially diagnosed with and treated for colon cancer

---

[1] Plaintiff has moved the court to strike defendant's reply (DN 32). Because plaintiff's motion was not timely filed, it will be denied.

Defendant has moved the court for a protective order quashing plaintiff's request for production of documents (DN 49) and plaintiff has moved to strike defendant's reply (DN 53). These motions will be denied as moot.

[2] The defendant here is only one of several named in this suit. This background is an abridged version of the undisputed facts as they relate in pertinent part to plaintiff and this individual defendant.

1

while confined as a state prisoner at the Western Kentucky Correctional Complex in 2003. At the end of March 2006, Runkle was transferred to the Little Sandy Correctional Complex ("LSCC"). Upon his arrival at LSCC, Runkle advised the institution that he was due for his yearly colonoscopy the coming June. *Complaint*, ¶ 23.

Defendant Dr. Ronald Fleming ("Fleming") started work at LSCC providing internal medicine to prisoners in May 2006 as an employee of the University of Kentucky under the university's medical services contract with the Kentucky Department of Corrections ("DOC").

Fleming was preceded at LSCC by Dr. Renate Stingl ("Stingl"). Stingl provided care and treatment to Runkle prior to Fleming's arrival at LSCC. Stingl ordered an x-ray of Runkle's liver and spleen performed April 12, 2006, which was negative. *Defendant's Reply*, Exhibit 2, Bates Stamp DOC 190. Stingl ordered a follow-up CT with IV contrast of Runkle's abdomen.

Fleming first saw Runkle as a patient at LSCC on May 10, 2006. Upon his initial evaluation of Runkle, Fleming issued orders for various lab tests. On the Lab Orders form, under a subheading titled "Additional Information/Comments," Fleming noted "consult GI for colonoscopy for h/o CA."[3] *Motion to Dismiss or Alternatively for Summary Judgment*, Exhibit 1 to Exhibit A, Bates Stamp Runkle 00255.

On May 22, the CT with IV contrast of Runkle's abdomen ordered by Stingl was performed and was negative. *Defendant's Reply*, Exhibit 3, Bates Stamp DOC 187. In light of the negative CT in follow-up of the negative x-ray, DOC denied Fleming's request for Runkle to have a colonoscopy.

---

[3]Plaintiff has interpreted Fleming's shorthand to mean "consult gastroenterologist for colonoscopy for history of cancer." Fleming has not voiced disagreement with this interpretation.

In July 2006, Runkle informed LSCC officials that he had not received his annual June colonoscopy. *Compl.*, ¶ 24. Additionally, Runkle reported to the medical staff and others that he had sharp pains in his lower stomach and blood in his stool. *Compl.*, ¶ 25. Runkle went on record with his complaints in September 2006. On September 6, 2006, and again on September 7, Runkle requested sick call, complaining of "Sharp pains in lower stomach/Rectal area. Blood in stool. Missed yearly colonostopy!" and "Stomach trouble – Blood in stool – sharp pain/dull ache!" *Id.* at Exh. 1 to Exh. A, Bates Stamp Runkle 00328 & 00329. On September 8, hemoccults Fleming had ordered for Runkle were positive for blood in the stool. On September 15, Fleming ordered a GI consult, EGD, and colonoscopy.

On October 10, 2006, Dr. Ewell Scott performed a colonoscopy with biopsy on Runkle at the St. Claire Regional Medical Center. The pathological diagnosis reported a tubular adenoma. On October 16, Fleming ordered Runkle's urgent transfer from LSCC to the Kentucky State Reformatory ("KSR") for surgical removal of the tumor. This order concluded Fleming's care and treatment of Runkle.

On October 18, Runkle was transferred to KSR. On December 27, 2006, Runkle underwent CT scan examinations of the abdomen and pelvis at Baptist Hospital Northeast. Thereafter, Runkle was diagnosed with a recurrence of colon cancer. In February 2007, Runkle underwent an exploratory laparotomy and resection of the small bowel at Baptist. The pathology report and hematology confirmed cancer. A port was placed, and over the next several months Runkle received chemotherapy treatment. On October 2, 2007, Runkle's chemotherapy was permanently stopped. On November 30, 2007, Runkle was released from confinement at KSR.

Runkle filed this action against Fleming for deliberate indifference to his serious medical

needs pursuant to 42 U.S.C. § 1983 and state law on December 28, 2007. Runkle died during the pendency of this suit and his widow, as administratrix of his estate, has been substituted as plaintiff.[4]

Plaintiff specifically alleges claims based on Runkle's Eighth Amendment right to be free from cruel and unusual punishment; Kentucky's statutory right for prisoners to have health care; medical negligence; outrage; negligence; and wrongful death.[5] Plaintiff argues that Fleming failed to order a colonoscopy for Runkle on May 10, 2006, or alternatively that Fleming failed to determine that the procedure he ordered on May 10 was never performed, which substantially delayed the diagnosis and treatment of Runkle's recurrent cancer.

This court has jurisdiction over plaintiff's civil rights claim pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.[6]

## DISCUSSION

First, as a matter of course, the court recognizes that plaintiff has sued Fleming in his individual capacity for money damages, thereby obviating the need for much discussion of Fleming's Eleventh Amendment immunity argument in that respect. Suffice it to say that despite the style of plaintiff's complaint, Fleming was adequately notified of his potential to be held personally liable in this case under the "course of proceedings" test of *Rodgers v. Banks*, 344 F.3d

---

[4] Runkle died on June 20, 2008. Runkle's widow, Sheila Renee Runkle, was substituted as the proper party for the plaintiff pursuant to motion under Fed. R. Civ. P. 25 (DN 39).

[5] The complaint was amended to include a claim for wrongful death at the time of Ms. Runkle's substitution as plaintiff.

Plaintiff concedes that the Ninth Amendment does not apply to his claims. *Plaintiff's Response*, p. 13.

[6] This action was transferred from the Western District of Kentucky, Paducah Division to this court by agreed order (DN 8).

587, 594 (6th Cir. 2003).[7]

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute also must be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Plaintiff alleges a claim under 42 U.S.C. § 1983 based on Runkle's Eighth Amendment right to be free from cruel and unusual punishment. Despite plaintiff's contention to the contrary, there are no genuine issues of material fact. Viewed in a light most favorable to plaintiff, Fleming's notation of May 10, 2006, "consult GI for colonoscopy for h/o CA" indicated a need to evaluate

---

[7]This likewise resolves the issue of whether Fleming is a "person" for the purposes of stating a claim under 42 U.S.C. § 1983.

5

Runkle for such a procedure. Indeed, it is undisputed that Fleming's request that Runkle have a colonoscopy was denied by the DOC in July, 2006. Fleming also treated Runkle on May 15 and July 26 for other complaints. Fleming ordered hemoccults for Runkle to self-test for blood in the stool. After Runkle presented with complaints and bloody stools on September 6 and 7, Fleming promptly ordered further tests and treatment resulting in a colonoscopy in early October.

"In order to state a cognizable claim under the Eighth Amendment with regard to medical care a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Alexander v. Fed. Bureau of Prisons*, 227 F. Supp. 2d 657, 664 (E.D. Ky. 2002) (*citing Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). It is undisputed that plaintiff has alleged a serious medical need, in that Runkle requested a colonoscopy in June 2006 in order to screen for the recurrence of cancer. However, plaintiff has failed to show that Fleming acted with deliberate indifference to this request. The sole basis for plaintiff's complaint is that Fleming allegedly caused Runkle's colonoscopy to be delayed from June until October 10, 2006. However, the undisputed facts before the court show otherwise. Fleming has not been shown to be responsible for any delay in providing Runkle with a colonoscopy. Moreover, under the facts of this case, any responsibility Fleming might have had for delay in the colonoscopy would constitute negligence, not a constitutional deprivation.

Deliberate indifference entails more. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . in connection with . . . supplying medical needs." *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (*quoting Whitley v. Albers*, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)). There is no evidence that Fleming acted with a "sufficiently culpable state

of mind" such that plaintiff's medical needs claim rises to an allegation of medical mistreatment of constitutional proportions. *Id.* at 298.

There is no suggestion that Fleming acted with the intent to harm Runkle. Moreover, there is no evidence that Fleming acted with a culpable disregard for Runkle's needs. Fleming cannot be said to have exhibited deliberate indifference because it has not been shown that he actually disregarded Runkle's medical condition or history. *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

Fleming's May 10 lab orders requested that Runkle have a GI consultation for purposes of a follow-up colonoscopy. That request was denied by DOC. There is no indication that in July 2006 Runkle told Fleming that he was having pain and bloody stools. It was not until September, when Runkle made requests for health care, that Fleming was made aware of Runkle's situation. When Runkle returned a positive hemoccult, Fleming ordered a colonoscopy within one week. Because there is no evidence that Fleming exhibited deliberate indifference to Runkle's serious medical needs, summary judgment must be granted in favor of Fleming on plaintiff's Eighth Amendment claim.[8]

Plaintiff also alleges pendent state claims based on Kentucky's statutory right for prisoners to have health care; medical negligence; outrage; negligence; and wrongful death.

Fleming argues that these claims are barred under the one year statutes of limitation set forth

---

[8]In light of the court's grant of summary judgment on this issue as a matter of law predicated on the absence of any genuine issue of material fact, the court will not consider the propriety of summary judgment on the separate basis of qualified immunity.

in KRS 413.140(1)(a) and (e).[9] Plaintiff filed the present action on December 28, 2007. Therefore, the timeliness of the claims hinges on whether plaintiff's causes of action accrued before or after December 27, 2006. Under KRS 413.140(2), an action against a physician for negligence or malpractice "shall be deemed to accrue at the time the injury is first discovered, or in the exercise of reasonable discretion should have been discovered." This "discovery rule" is restated in *Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709, 712 (Ky. 2000), which further serves to distinguish "discovery of injury" from "discovery of harm."

> The Restatement (Second) of Torts § 7, comment (1965), defines "harm" as "the existence of loss or detriment in fact of any kind to a person resulting from any cause." Harm in the context of medical malpractice might be the loss of health following medical treatment. "Injury," on the other hand, is defined as "the invasion of any legally protected interest of another." Thus, injury in the medical malpractice context refers to the actual wrongdoing, or the malpractice itself. Harm could result from a successful operation where a communicated, calculated risk simply turns out poorly for the patient, although the medical treatment met the highest medical standards. In such case, there would be no "injury," despite the existence of "harm." Under the discovery rule, it is the date of the actual or constructive knowledge of the injury which triggers the running of the statute of limitations. *Wiseman* at 712 (citations omitted).

Therefore, in cases like this one, knowledge of the malpractice itself triggers the statute of limitations. Here, the alleged malpractice or injury that Fleming caused Runkle was a delay in the receipt of a colonoscopy. However, it does not translate that the statute of limitations was triggered merely upon Runkle's recognition that June had passed and he had not received a colonoscopy. Otherwise, the present action would have accrued on July 1, 2006. *Wiseman* makes clear that, in a medical case, harm can exist independent of injury.

However, in a medical malpractice case, it appears the converse may not be true: absent

---

[9]The court notes that plaintiff's claim of outrage is subject to the five-year statute of limitations of KRS 413.120. *Craft v. Rice*, 671 S.W.2d 247 (Ky. 1984).

cognizable harm there can be no actionable injury.  In this case, the discovery of alleged harm and alleged injury occurred simultaneously.  Here, the harm that Runkle allegedly suffered was a delay in the diagnosis and treatment of cancer.  It was not until Runkle was diagnosed with cancer that he was on notice that he might have been harmed by a delay in receiving a colonoscopy.  Therefore, it was not until Runkle was diagnosed with cancer that he surmised he had been injured by Fleming.  Runkle was not diagnosed with a recurrence of cancer until some time after December 27, 2006.  Therefore, Runkle's claims were timely filed within a year of accrual.

However, plaintiff has failed to make the showing which would defeat Fleming's motion for summary judgment.  "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted).  However, "the burden on the moving party may be discharged by showing. . . that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325 (internal quotation marks omitted).  Once the moving party has made the showing, the burden passes to the nonmoving party to go beyond the pleadings and designate specific facts showing there is a genuine issue for trial.  *Id.* at 324.

Here, Fleming has shown that there is an absence of evidence to support any of plaintiff's claims. Fleming has shown through declarations and medical records that his lab orders of May 10, 2006 requested that Runkle have a colonoscopy.  Fleming has shown that DOC reviewed and denied his request.  Fleming has shown that he provided further care and treatment to Runkle culminating

9

in the order of Runkle's transfer to a higher level of care.

In contrast, plaintiff merely professes that Fleming failed to order a colonoscopy for Runkle on May 10. However, as stated earlier, on May 10 Fleming requested a consult with a gastroenterologist for Runkle to have a colonoscopy. Fleming's request was denied by the DOC. Plaintiff has failed to offer affirmative evidence in the form affidavits, medical expert testimony, or otherwise to factually support claims based on Kentucky's statutory right for prisoners to have health care; medical negligence; outrage; negligence; or wrongful death. Plaintiff has failed to cite evidence to support the allegation that Fleming failed to comport with the applicable standard of care.

Fleming's motion for summary judgment on plaintiff's pendent state claims will be granted.

## CONCLUSION

Because the court finds that there are no genuine issues of fact and defendant is entitled to summary judgment on plaintiff's claims as a matter of law, defendant's motion for summary judgment will be granted and defendant will be dismissed from this action.

A separate order will be entered herein this date in accordance with this opinion.