UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SHEILA RENEE RUNKLE,                                                                       PLAINTIFF
*Administratrix of the Estate of*
*Robert Earl Runkle, Deceased*

v.                                                                  CIVIL ACTION NO. 3:08-CV-188-S

BECKY W. PANCAKE, *et al.*                                         DEFENDANTS

**MEMORANDUM OPINION**

This case is before the Court on the defendants' motion for summary judgment. Robert Earl Runkle[1] brought suit under 42 U.S.C. § 1983 against the Kentucky Department of Corrections and various prison doctors and officials, alleging violations of his rights under the Eighth and Fourteenth Amendments as well as various state-law tort theories of recovery. The motion before the Court today focuses on the constitutional claims against the Department of Corrections and five prison officials, sued in their individual capacities: Becky Pancake, Warden of the Western Kentucky Correctional Complex (WKCC); Larry Chandler, former Warden of the Kentucky State Reformatory (KSR); Gary Beckstrom, former Warden of the Little Sandy Correctional Complex (LSCC); John Rees, former Commissioner of the Department of Corrections; and Scott Haas, Medical Director for the Department of Corrections. These defendants have moved for summary judgment, and for the reasons that follow the Court will sustain that motion.

---

[1] Mr. Runkle has since passed away. His wife, Sheila Renee Runkle, is the successor-in-interest to his original lawsuit and is now the named plaintiff in this case. For simplicity's sake, the Court will refer to Mr. Runkle as "plaintiff" or "Runkle."

**BACKGROUND**

In 2003, while an inmate at WKCC, plaintiff was diagnosed with colon cancer. He received treatment (about which he registers no legal complaint) through the first several months of 2006. During that time he was moved from WKCC to KSR for treatment, and then back to WKCC. After complaining of inadequate follow-up care at WKCC, Runkle was transferred in March 2006 to LSCC. After this transfer, on April 6, 2006, he sent a letter to Haas regarding the quality of his care. On May 10, 2006, plaintiff was seen by prison doctor Ronald Fleming,[2] whose assessment of the patient indicates that he "need[s] CEA[3] and [follow-up] colonoscopy." Neither of these tests was performed immediately.

On September 6 and 7, 2006, Runkle reported pain in his lower stomach and rectal area and blood in his stool. Dr. Fleming ordered a colonoscopy, which was performed on October 10, 2006. This resulted in the diagnosis of a tubular adenoma. Runkle was transferred to KSR for removal of the tumor and continued medical treatment. On October 26, he was scheduled for an initial appointment to see Dr. Thomas K. Hart of the Oldham County Surgical Associates on November 20. Runkle attended this appointment, but Dr. Hart was evidently not provided with a copy of Dr, Fleming's colonoscopy report. Dr. Hart ordered a CT scan[4] in preparation for surgery. Runkle again met with Dr. Hart on February 12, 2007, and underwent surgery for a laparotomy and surgical resection of the small intestine on February 26.

---

[2] Dr. Fleming was initially named as a defendant in this suit. All claims against him have since been dismissed.

[3] [A carcinoembryonic antigen test, used to assess how widespread a case of colon cancer is and whether treatment has been effective.]

[4] A type of X-ray used to pinpoint the location of a tumor.

Runkle then underwent post-surgery chemotherapy until October 1, 2007. At that time he was seen by Dr. Vivek R. Sharma at the James Graham Brown Cancer Center, whose assessment included a plan to restart systematic chemotherapy. That plan was evidently not implemented during the remainder of Runkle's time in state custody, which lasted until his release on November 30, 2007. Robert Earl Runkle passed away, after the initiation of this litigation, on June 20, 2008.

In arguing that Runkle's Eighth Amendment rights were violated, plaintiff presses two basic claims: First, he asserts that the diagnosis and treatment of his recurrent cancer should have begun in June 2006 with a colonoscopy pursuant to his meeting with Dr. Fleming, but that the colonoscopy was put off until October and the subsequent surgery was delayed another four months until February 2007. Second, he finds fault with the failure to provide chemotherapy during the final two months of his imprisonment, from October 1 to November 30, 2007.

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of material fact and that the movant is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party is required to present some significant

probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in the light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Runkle seeks relief under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. The Eighth Amendment, as applied to the states by the Fourteenth, prohibits cruel and unusual punishment of prisoners. It "imposes duties on [prison] officials, who must provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*quoting Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). *Farmer* laid down the two elements of a successful Eighth Amendment conditions-of-confinement claim. "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* at 834 (internal quotation marks and citations omitted). Second, the prison official's "state of mind [must be] one of 'deliberate indifference' to inmate health or safety." *Id.* (*quoting Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)).

Furthermore, it is black-letter law that § 1983 does not permit recovery on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A plaintiff must prove that the defendant either directly caused the complained-of injury himself, or that he caused it through his actions in supervisory role. As a corollary to the *Monell* rule, however, "liability of supervisory personnel must be based on more than merely the right to control employees." *Hays v. Jefferson County*, 668 F.2d 869, 872 (6th Cir. 1982). Specifically, "a supervisory official's failure

to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (*quoting Hays*, 668 F.2d at 874). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays*, 668 F.2d at 874. Finally, "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee*, 199 F.3d at 300 (*quoting Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998)).

With all this in mind, we can quickly resolve this case with regard to five of the six defendants involved in this motion. Plaintiff concedes that "at present the three wardens and Commissioner cannot be linked to deliberate indifference because the medical records furnished to date do not alone prove knowledge" on their parts. (Resp. 25.) Plaintiff complains of incomplete compliance with discovery requests, but has not moved to compel discovery under Rule 37 and has nevertheless managed to provide as exhibits some 170 pages of medical records. None of those documents is sufficient to demonstrate that Pancake, Rees, Chandler, or Beckstrom knew of Runkle's condition. Without this knowledge, it is impossible to prove deliberate indifference. For the same reasons, the Department of Corrections also cannot be held responsible here. At this stage, the absence of any evidence of a critical element of the case requires the Court to grant summary judgment in favor of each of these five defendants.

The only remaining claims are thus against Dr. Haas. Plaintiff does not appear to allege any fact that would support holding him liable for the failure to provide chemotherapy in late 2007, so summary judgment is immediately appropriate with respect to that aspect of the case.

As to the delay-in-treatment claim, the proffered evidence carries little more substance. In essence, it contains but four "facts." First, Haas received a letter from Runkle in April 2006 regarding his treatment, and subsequently reviewed his medical record, thereby acquiring knowledge of his condition. Second, Haas responded with his own letter to Runkle, dated May 2, 2006, which stated that "I feel that you are receiving adequate care while being housed at Little Sandy Correctional Complex." From these first two facts we are asked to infer that Dr. Haas "knowingly acquiesced in the failure of the LSCC medical staff to meet Mr. Runkle's serious medical needs" and that he "involved himself in Mr. Runkle's care by reviewing the medical record and rendering an opinion that the care was adequate." (Resp. 27.) But even drawing those inferences, all of this behavior occurred prior to the May 10 meeting with Dr. Fleming at which a colonoscopy was ordered. It thus could not have contributed to the complained-of delay in providing the procedure, and Haas cannot be held liable for that delay.

The third and fourth "facts" asserted in plaintiff's brief purport to show that Haas caused the delay in surgical removal of the mass discovered by the October 2006 colonoscopy. The allegations amount to the claim that Haas knew of Runkle's condition but failed to exercise his authority as Medical Director to order urgent surgery. These allegations are insufficient to show § 1983 liability. Haas's failure to intervene in Runkle's case does not amount to direct involvement in the actions that led to his death. Chief Judge Easterbrook of the Seventh Circuit has recently explained:

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules . . . along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999

> other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

*Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Plaintiff has not shown that Haas was obligated to go far beyond the call of duty to order that medical treatment be provided on a schedule other than that set by employees lower down the chain of command. Haas did not actively order that treatment be delayed, nor did he himself schedule the operation. Absent such active participation, Haas can be held liable only if he "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Hays*, 668 F.2d at 874. Nothing in the record indicates that this is the case. Plaintiff cannot show that Haas is liable as either an active participant or as a supervisor. Summary judgment is therefore appropriate.

Because the Court will grant summary judgment to the defendants as to all federal issues in this case, entertaining pendent jurisdiction over plaintiff's state-law claims is unwarranted. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Accordingly, those claims will be dismissed without prejudice as to these defendants and left to the state courts. The Court will enter a separate order consistent with this opinion.

Charles R. Simpson III, Judge
United States District Court